# DONNA SMITH *v.* COLDWELL BANKER COMMERCIAL N.E.R.A., LLC, ET AL.
## (AC 25585)

Lavery, C. J., and DiPentima and Peters, Js.

Argued April 26—officially released September 13, 2005

*William W. Taylor*, for the appellant (plaintiff).

*M. Dean Montgomery*, for the appellees (defendants).

*Opinion*

LAVERY, C. J. The plaintiff seller, Donna Smith, appeals from the judgment of the trial court awarding the defendant brokers, Coldwell Banker Commercial N.E.R.A, LLC (Coldwell Banker), and Jack Guttman,[1] a real estate commission for the sale of the plaintiff's business.[2] On appeal, the plaintiff claims that the court improperly found that the defendants could not have breached their contract with the plaintiff because they were not parties to a renegotiated sales contract and that the defendants had earned their sales commission on the original contract between the parties. We affirm the judgment of the trial court.

The plaintiff was the owner of the Georgetown Early Learning Center, LLC, a child day care business in Wilton. On April 4, 2001, she entered into an exclusive listing agreement with the defendants to sell the business. The defendants were to receive a 5 percent commission on the sales price. At the time of the sale, the business was listed at a price of $350,000.

The defendants procured a buyer, Ellen Goldstein, who offered to pay the listing price. The plaintiff and the buyer entered into a purchase of assets agreement on May 18, 2001. A new contract was entered into for the purchase and sale of the business assets on July

---

[1] Guttman is the real estate broker under whose license Coldwell Banker operated.

[2] On June 3, 2002, the plaintiff's business, the Georgetown Early Learning Center, LLC, assigned to her all rights to collect the debt allegedly due from the defendants.

12, 2001. The purchase price remained the same in this contract, but $100,000 was to be paid at the closing, and $250,000 was to be paid by a purchase money promissory note. Two conditions also were placed into the contract: (1) the buyer had to assume the lease where the business was located, and (2) the buyer had to obtain a transfer of the existing day care license to her name.

The closing for the sale of the business assets also took place on July 12, 2001. The buyer provided the plaintiff with a personal check in the amount of $100,000 and a purchase money note for the balance of the $350,000. The plaintiff later gave the defendants a check for $16,250, which equaled the 5 percent commission less the $1250 deposit held by the defendants.

The plaintiff subsequently learned that the buyer had placed a stop payment order on the $100,000 check. The seller did not seek to enforce her contractual rights on the sale and, instead, renegotiated a new contract with the buyer. The new contract, dated September 19, 2001, reduced the purchase price to $165,900 but kept the same contingencies contained in the previous contract. A new closing took place on September 19, 2001.

The plaintiff demanded a return of part of the commission from the defendants on the basis of the new sales price. The defendants maintained that they earned the commission on the higher selling price and refused to return any of the money to the plaintiff. The plaintiff then brought an action in the Superior Court against the defendants, alleging (1) breach of fiduciary duties, (2) breach of contract and (3) violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The court found in favor of the defendants on all three counts. This appeal followed.

The plaintiff claims that the court improperly found that the defendants could not breach their contract with her because they were not parties to a revised sales

contract and that the court improperly denied her claim for partial return of the broker's commission because it concluded that the defendants had earned their commission on the original $350,000 sales price. She argues that the court improperly found that a broker would have to be a party to the buyer's and seller's contract to make the broker's commission contingent on completion of the conditions subsequent to the contract. In other words, the plaintiff claims that the defendants had not brought a ready, willing and able buyer because the buyer did not complete subsequent conditions under the sales contract, and, therefore, the commission was not earned on the July 12, 2001 contract price. We disagree.

"The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000).

This case is not about whether the defendants earned their sales commission but rather concerned when that commission was earned and to which contract it should be applied. "To recover a commission, a broker must ordinarily show (1) that he has produced a customer ready, willing and able to buy on terms acceptable to the seller, or (2) that he has brought the buyer and seller to an enforceable agreement." (Internal quotation marks omitted.) *Ditchkus Real Estate Co.* v. *Storm*, 25 Conn. App. 51, 54, 592 A.2d 959, cert. denied, 220 Conn. 905, 593 A.2d 971 (1991).

The court found that the defendants were not parties to the postclosing conditions agreed on by the plaintiff and the buyer regarding licensing and assumption of the lease. We agree. Although the parties dispute whether the conditions were "conditions precedent" or "conditions subsequent," we note that our recent decision in *Gingras* v. *Avery*, 90 Conn. App. 585, 591 n.4, 878 A.2d 404 (2005), stated that "[t]he modern law of contracts does not recognize a substantive difference between conditions precedent and subsequent." We hold that the defendants were not parties to those conditions between the plaintiff and the buyer, not because of the type of conditions that they were, but because of the language in the contract regarding commissions. "The basis for the payment of the brokerage commission to the defendant agent must be found in the agreement of sale together with the listing agreement." *Urbanski* v. *Halperin*, 30 Conn. Sup. 575, 578, 307 A.2d 180, cert. denied, 165 Conn. 798, 305 A.2d 285 (1973); see also *William Pitt, Inc.* v. *Taylor*, 186 Conn. 82, 84, 438 A.2d 1206 (1982). The listing agreement stated that the defendant's commission "shall be paid when earned or at the close of escrow, through escrow, or if there is no escrow, then upon recordation of the deed; provided, however, if the transaction involves an installment contract, then payment shall be made upon execution of such contract." The sales contract between the plaintiff and the buyer allowed for commissions to be earned at an earlier date, stating that the "[c]ommissions *shall be earned, due and payable* only upon closing." (Emphasis added.) Therefore, as contracted by the buyer and seller, the commission was earned, due and payable at the time of the closing and, thus, the defendants were entitled to the benefit of that clause. The court found that it was "very clear and unequivocal that a closing did, in fact, take place" on July 12, 2001. Therefore, by agreement between the plaintiff and the

buyer, any conditions that were to take place after the closing would not affect the defendants' commission because it already had been earned.

Even if the defendants had not earned their commission at the July 12, 2001 closing, they still earned their commission on the $350,000 closing price. The plaintiff attempts to argue that the defendants had not earned a commission on the July 12, 2001 contract because the buyer had not fulfilled the conditions regarding assumption of the lease and licensing, and, therefore, the buyer was not "ready, able and willing to buy on terms and conditions prescribed or agreed to by the seller." *Walsh* v. *Turlick*, 164 Conn. 75, 80, 316 A.2d 759 (1972). The plaintiff relies on *Kost* v. *Reilly*, 62 Conn. 57, 24 A. 519 (1892), for the proposition that if conditions in the contract are not yet met, such as a licensing contingency, then a sale has not occurred, and the commission is not earned on that contract. She argues that this case presents a similar situation, and, thus, the September 19, 2001 sales contract invalidated the July 12, 2001 contract because the contract conditions had not been met. We disagree.

In *Kost*, the licensing requirement was never met, and once the buyer failed to continue his installment payments, the seller sold the property to another party. Id., 59. Here, the licensing and leasing conditions eventually were met and were not the reason for the stop payment order on the deposit check. Although the parties failed to call the buyer as a witness or offer evidence of the reason for the stop payment order, it is clear that some other problem caused the conflict between the buyer and the seller.[3] The plaintiff also relies on

---

[3] The parties alluded to the fact that the buyer may have been dissatisfied over the school's enrollment. An exhibit entered into evidence, consisting of a letter to Guttman from the plaintiff, states that the plaintiff believed that Coldwell Banker partially was at fault for the rescission of the transaction by its unauthorized disclosure of confidential information to the plaintiff's landlord. The reason for the stop payment order was never explained adequately.

*Urbanski* v. *Halperin,* supra, 30 Conn. Sup. 578, for the proposition that there was not an enforceable contract because the sales contract conditions had not been met. Those conditions, however, were met, and the plaintiff has failed to show that the original sales contract was unenforceable. The defendants provided a ready, willing and able buyer, who met all of the conditions of the contract, and provided a check and a promissory note at the closing totaling the original sales price of $350,000. The plaintiff had options to enforce the July 12, 2001 contract, but instead chose to renegotiate a new contract for a much lower sale price. The plaintiff cannot rely on the fact that the conditions were not yet met, but later would be, to nullify a valid and enforceable agreement that affected the rights of the defendants. The defendants brought the plaintiff and the buyer to an enforceable contract, thereby earning a commission on the $350,000 sales price. See *Ditchkus Real Estate Co.* v. *Storm,* supra, 25 Conn. App. 54 (broker entitled to commission if he has brought buyer, seller to enforceable agreement).

The plaintiff also argues that the July 12, 2001 contract was not valid because she did not receive "good funds." We will not hold the defendants liable for the plaintiff's failure to protect herself by accepting a personal check for such a large amount of money and not requiring certified funds to be provided. See 77 Am. Jur. 2d 331–32, Vendor and Purchaser § 303 (1997) (unless otherwise specified, money or its legal equivalent required for payment between vendor and purchaser, and although cashier's check constitutes tender of money, personal check not legal tender if objection duly made). The plaintiff failed to object to the personal check, and the closing took place. The fact that a stop payment order later was placed on the check is a consequence of a risk taken by the plaintiff and does not

affect the defendants' earning of a commission on an enforceable contract.

In conclusion, a closing took place in this case, and, therefore, as stated in the sales agreement, the defendants earned their commission on the $350,000 sales price. Even if the commission was to be earned at a time after the closing, the defendants brought the plaintiff and the buyer to an enforceable contract, which the plaintiff later chose not to enforce. Therefore, the court properly found that the defendants had earned their sales commission on the July 12, 2001 contract. The events occurring after the closing, although unfortunate, did not affect the right of the defendants to keep the commission on the higher sales price.

The judgment is affirmed.

In this opinion the other judges concurred.